UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | CRIMINAL NO. 4:19-CR-087-SDJ |
| | § | |
| JAMAINE JAVON | § | |
| WILLIAMSON (3) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jamaine Javon Williamson's Motion for Immediate Release. (Dkt. #165). The Government has filed a response in opposition. (Dkt. #167). Having considered the parties' filings, the record, and the applicable law, the Court **DENIES** Williamson's motion.

### I. BACKGROUND

Williamson is currently serving a sixty-month term of imprisonment at FCI Herlong for possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c). His anticipated release date is April 15, 2023. Citing risks to his health associated with the COVID-19 pandemic and relying on 18 U.S.C. § 3582(c)(1)(A), Williamson requests that the Court reduce his sentence to time served and order him released from prison.

Earlier this year, Williamson submitted a request for compassionate release to his warden, arguing that the risk created by the COVID-19 pandemic, coupled with Williamson's underlying asthma, constitutes an extraordinary and compelling reason warranting Williamson's release from prison. The warden denied Williamson's request. Williamson subsequently filed the instant motion in this Court, seeking a

1

sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Again, Williamson argues that his asthma, combined with the risks created by the COVID-19 pandemic and the fact he is African American, presents an extraordinary and compelling reason warranting a reduction in his sentence. (Dkt. #165 at 7).

## II. DISCUSSION

### A. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons ("BOP") if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that

2

rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated U.S.S.G. § 1B1.13. In application note 1 to Section 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13 cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant; (3) issues arising from the defendant's family circumstances; and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because Section 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to Section 994(t), the policy statements contained in Section 1B1.13 were binding on district courts considering Section 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)).

3

In 2018, Congress amended Section 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate-release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate-release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, Section 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under Section 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate-release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to Section 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to Section 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[1] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling reasons" when a Section 3582(c)(1)(A)

---

[1] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate-release motions filed by prisoners. *See, e.g.*, *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions).

motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a Section 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the Bureau of Prisons. But it does not govern here—on the newly authorized motion of a prisoner." (quotation omitted)). Therefore, when a prisoner files a compassionate-release motion, courts must determine what constitutes an "extraordinary and compelling reason" under Section 3582(c)(1)(A)(i).

### B. Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate-release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitute "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate-release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ('U.S.S.G.') § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g.*, *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy

statement as guidance when considering prisoner-filed compassionate-release motions is warranted for several reasons.

First, whether a compassionate-release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change Section 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, Section 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern Section 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in Section 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request

compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate-release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under Section 3582(c)(1)(A).

Using U.S.S.G. § 1B1.13 and its commentary as guidance to determine what is extraordinary and compelling in defendant-filed motions is further warranted by Congress's mandate that the Sentencing Commission, rather than courts, determine what constitute "extraordinary and compelling reasons" warranting a sentence reduction under Section 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to issue policy statements describing what constitute extraordinary and compelling reasons under Section 3582(c)(1)(A)); *Garcia*, 655 F.3d at 435 (concluding that Congress intended the Sentencing Commission's policy statements to be binding on courts in Section 3582(c) proceedings). To be sure, the Fifth Circuit has held that there is no binding policy statement because the Sentencing Commission has yet to amend its guidelines to account for the fact that defendants can now file compassionate-release motions. *See Shkambi*, 993 F.3d at 392. But Section 1B1.13 and its commentary still provide substantial insight into what the Sentencing Commission considers to be an "extraordinary and compelling reason" because the statutory standard the Sentencing Commission was applying when it promulgated Section 1B1.13 has not changed.

Nor does Section 1B1.13 become useless as guidance for defendant-filed compassionate-release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Section 1B1.13 and its accompanying application notes "provide a working definition of 'extraordinary and compelling reasons'"—the standard that applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. Indeed, when the Sentencing Commission promulgated Section 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of Section 3582(c)(1)(A). 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, Section 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under Section 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of Section 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because Section 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of Section 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under Section 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. Therefore, any proffered

"extraordinary and compelling reason" that is not contained in the Sentencing Commission's policy statement should nonetheless be similar to those reasons in order to warrant release under the statute. In this sense, the Court's analysis of whether Williamson has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided, though not strictly bound, by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

**C. Williamson's Motion**

As an initial matter, the Court may consider Williamson's compassionate-release motion only if he first meets Section 3582(c)(1)(A)'s exhaustion requirement. The statute provides that a court may not consider any modification to a defendant's sentence under Section 3582(c)(1)(A)(i) unless a motion for such a modification is made by the Director of the BOP or by a defendant who has fully exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A). It is undisputed that Williamson has met the exhaustion requirement. Williamson requested compassionate release from the warden of his facility on the grounds asserted before this Court, and the warden denied his request. *See* (Dkt. #165-2); (Dkt. #167 at 2); *see also* 28 C.F.R. § 571.61(a) (providing that a prisoner's Section 3582(c)(1)(A) request for compassionate release must be submitted to the warden of his or her facility).

Although Williamson has satisfied the threshold exhaustion requirement, his motion must be denied because he has failed to present "extraordinary and compelling reasons" within the meaning of Section 3582(c)(1)(A)(i). Williamson

9

argues that his asthma, which places him at a higher risk of complications should he become infected with COVID-19, coupled with the COVID-19 public-health crisis and the fact he is African American, constitutes an extraordinary and compelling reason warranting his release. As explained above, the Court first looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" contained in U.S.S.G. § 1B1.13 and its application notes.

Williamson's circumstances do not fall within the first category of "extraordinary and compelling reasons" identified by the Sentencing Commission—circumstances arising from certain medical conditions. Section 1B1.13's application note 1 provides the following two circumstances under which a defendant's medical condition may warrant a sentence reduction:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, or
>     (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13 cmt. n.1(A). Although Williamson asserts that he is presently suffering from asthma, he does not maintain that his asthma, which the record shows can be effectively managed with medication, constitutes a serious medical condition

that renders him unable to engage in self-care. Rather, Williamson fears that his asthma could make him more susceptible to developing a serious medical condition should he contract COVID-19.

Any suggestion that Williamson's asthma, coupled with the risk of contracting COVID-19, constitutes a serious medical condition that substantially diminishes his ability to provide self-care due to his conditions of confinement does not comport with the plain text of application note 1 to U.S.S.G. § 1B1.13. The note is written in the present tense. That is, the defendant must be presently suffering from a serious medical condition and such condition must presently diminish the defendant's capacity to engage in self-care in the environment of a correctional facility. By contrast, Williamson's motion relies on the risk of his contracting COVID-19 in the future and the risk that COVID-19 would have serious effects on him.

In addition, Williamson's inability to engage fully in proactive measures to minimize the risk of contracting COVID-19 is not caused by his asthma. So even if Williamson's asthma were a serious medical condition, he has not indicated how his asthma prevents him from providing self-care. Thus, Williamson's concerns about the risks of COVID-19 do not fall within the "extraordinary and compelling reasons" enumerated by the Sentencing Commission in its commentary to U.S.S.G. § 1B1.13.

Because the Fifth Circuit has held that the Sentencing Commission's definition of "extraordinary and compelling reasons" governs Section 3582(c)(1)(A)(i) motions only when such motions are filed by the BOP, Williamson's failure to show that his circumstances fall within those described by the Sentencing Commission is not fatal

to his motion. But as discussed above, the Court still looks to the Sentencing Commission's definition of "extraordinary and compelling reasons" as significant guidance in construing that phrase as to defendant-filed motions. *See Thompson*, 984 F.3d at 433 (noting that the Sentencing Commission's commentary "informs [the] analysis" as to what constitute "extraordinary and compelling reasons" for defendant-filed compassionate-release motions). Accordingly, Williamson's allegedly extraordinary and compelling reasons should be similar in kind to those enumerated by the Sentencing Commission.

The reasons Williamson asserts as a basis for his release are unlike any of the reasons enumerated by the Sentencing Commissions in its commentary to U.S.S.G. § 1B1.13. The circumstances in application note 1 all include significant hardships that are *presently* affecting the defendant, including where a medical condition or the aging process is presently causing the significant health problems or where the defendant has minor children or an incapacitated spouse who are presently left without a caregiver because of the defendant's incarceration. By contrast, Williamson argues that he should be released because incarceration increases his risk of contracting COVID-19 and his asthma increases his risk of having complications from COVID-19.

Of course, neither Williamson's infection with COVID-19 nor his experiencing serious complications after infection is guaranteed. Williamson's motion does not identify any specific, significant hardship that he presently faces; rather, the motion raises only the concern that Williamson is at risk for developing a significant

12

hardship in the future. There is no analogous provision in Section 1B1.13 or its commentary where the increased *risk* of hardship caused by incarceration is considered an "extraordinary and compelling reason" as that phrase is used in 18 U.S.C. § 3582(c)(1)(A)(i).

Beyond the Sentencing Commission's nonbinding guidance, there is an additional reason why Williamson has failed to present an extraordinary and compelling reason for early release: he declined to receive a vaccine that is highly effective against COVID-19 and current variants. Shaun J. Grannis et al., *Interim Estimates of COVID-19 Vaccine Effectiveness Against COVID-19-Associated Emergency Department or Urgent Care Clinic Encounters and Hospitalizations Among Adults During SARS-CoV-2 B.1.617.2 (Delta) Variant Predominance*, 70 MORBIDITY & MORTALITY WEEKLY REPORT 1291, 1292 (2021). For most prisoners, the availability of a COVID-19 vaccine "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). A prisoner who is "unable to receive or benefit from a vaccine" may still be able to show that an increased risk of serious complications from COVID-19 due to preexisting conditions constitutes an extraordinary and compelling reason for sentence reduction. *Id.* But, as Judge Easterbrook aptly put it, "a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release." *Id.*; *see also United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("[I]f an inmate does not present a compelling reason

13

justifying the failure to be vaccinated despite access to the vaccine, a district court would abuse its discretion by granting a motion seeking a sentence reduction under § 3582(c)(1)(A)(i) on the grounds that COVID-19 constitutes an extraordinary and compelling justification.").

Williamson refused the opportunity to receive the COVID-19 vaccine but has not asserted, let alone presented any evidence, that the vaccine is medically contraindicated for him. Nor has Williamson provided any other explanation for remaining unvaccinated. Indeed, nothing in the record suggests that Williamson is unable, medically or otherwise, to receive or benefit from the available COVID-19 vaccines. And his prison reports that it has fully vaccinated 1039 of its 1393 inmates. *See* FED. BUREAU OF PRISONS, *COVID-19 Vaccine Implementation*, https://www.bop.gov/coronavirus/;jsessionid=DC647567442BAD34A85325ABD726D52B (last visited Nov. 15, 2021). So, while Williamson's asthma puts him at an increased risk of suffering serious complications from COVID-19, that risk is not extraordinary or compelling—it is "self-incurred." *See Broadfield*, 5 F.4th at 803.

Williamson is, of course, free to refuse COVID-19 vaccination. But he cannot simultaneously claim that he is entitled to compassionate release because of the risk of complications from COVID-19 while, without providing any explanation, refusing a vaccine that could virtually eliminate that risk. Thus, the risk Williamson faces from the virus, whether considered alone or in conjunction with his asthma, does not constitute an extraordinary and compelling reason within the meaning of Section 3582(c)(1)(A)(i). And because Section 3582(c)(1)(a)(i) authorizes sentence reductions

only for "extraordinary and compelling reasons" within the meaning of the statute, Williamson's motion must be denied.[2]

### III. CONCLUSION

For the foregoing reasons, Defendant Jamaine Javon Williamson's Motion for Immediate Release, (Dkt. #165), is **DENIED**.

**So ORDERED and SIGNED this 18th day of November, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

[2] To the extent Williamson requests, in the alternative, that the Court order him released to home confinement, such request must also be denied. The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Groover*, 844 F.App'x 185, 188 (11th Cir. 2021) (per curiam) ("Neither § 3624(c)(2) nor the CARES Act . . . give the judiciary any authority to grant an inmate's request for home confinement."); *United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."); *Zheng Yi Xiao v. La Tuna Fed. Corr. Inst.*, No. 3:19-CV-97, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement." (citing *Moore v. U.S. Att'y. Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971) (per curiam))).